## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF  WEST VIRGINIA

| | |
|---|---|
| **SNOWSHOE MOUNTAIN, INC.,** ) | |
| ) | |
| ) | **CASE NO**: **2:22-cv-18** |
| **Plaintiff/Counterclaim** ) | |
| **Defendant** ) | **JUDGE** |
| ) | The Honorable Thomas S. Kleeh |
| **v.** ) | |
| ) | |
| **RUBY DOG HOLDINGS, LLC,** ) | **JURY DEMANDED FOR LEGAL** |
| ) | **CLAIMS** |
| **Defendant/Counterclaim** ) | |
| **Plaintiff.** ) | |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
##  TO PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF

Defendant  and  Counterclaim-Plaintiff  Ruby  Dog  Holdings,  LLC  ("Ruby  Dog"  or

"Defendant"),  by  and  through  its  undersigned  counsel,  files  the  following  Answer,  Affirmative

Defenses,  and  Counterclaims  to  Snowshoe  Mountain,  Inc.'s  ("SMI"  or  "Plaintiff")  Complaint  for

Declaratory  Relief  ("Complaint"),  and  in  support  states  as  follows:

### PARTIES

1.     Paragraph 1 is admitted.

2.     Paragraph 2 is admitted in part and denied in part.  It is admitted that Ruby Dog is

a limited liability company and that it is organized under the laws of Pennsylvania.  However, to

the extent this paragraph alleges the citizenship of Ruby Dog, it is denied.  Ruby Dog, as an LLC,

is a citizen of the states in which its members are domiciled.  No member of Ruby Dog is a citizen

of Pennsylvania, thus it is not a citizen of Pennsylvania.

## JURISDICTION AND VENUE

3.      Paragraph 3 is admitted in part and denied in part.  It is admitted that the statute cited in Paragraph 3 establishes original and general jurisdiction.  However, it is denied that the statute cited in Paragraph 3 is relevant to this matter because this matter no longer is subject to the jurisdiction of West Virginia state courts because it has been removed to the United States District Court for the Northern District of West Virginia.  Instead, this Court has subject matter jurisdiction based on diversity of citizenship.

4.      Paragraph 4 is admitted in part and denied in part.  It is admitted that the statute cited in Paragraph 3 establishes original and general jurisdiction.  However, it is denied that the statute cited in Paragraph 3 is relevant to this matter because this matter no longer is subject to the jurisdiction of West Virginia state courts as it has been removed to the United States District Court for the Northern District of West Virginia.  Instead, this Court has subject matter jurisdiction based on diversity of citizenship.

5.      Paragraph 5 is admitted in part and denied in part.  It is admitted that venue in Pocahontas County, West Virginia is appropriate.  However, it is denied that the Pocahontas County Court of Common Pleas is the appropriate venue or that the statue cited is relevant to this matter because this matter no longer is subject to the jurisdiction of West Virginia state courts as it has been removed to the United States District Court for the Northern District of West Virginia. Instead, the proper venue for this matter is this Court, the federal district court encompassing Pocahontas County.

## FACTS

6.      Paragraph 6 is an incorporation paragraph to which no response is required.

7.      Paragraph 7 is admitted.

8.      Paragraph 8 is admitted in part and denied in part.  Paragraph 8 is admitted in so far as it accurately characterizes the June 28, 1979 deed as having conveyed property from Snowshoe Company to ABAS.  It is further admitted that ABAS, as the grantee of the June 28, 1979 deed, is the predecessor-in-title to Ruby Dog.  Any allegations not admitted specifically are denied.

9.      Paragraph 9 is admitted.

10.     Paragraph 10 is admitted in part and denied in part.  It is admitted only that the quoted paragraph appears in the June 28, 1979 deed.  Any allegations not admitted specifically are denied.

11.     Paragraph 11 is denied in so far as it characterizes the impact and scope of the so called "Recreational Facilities Agreement."  To the extent a further response is deemed necessary, this Paragraph is denied.

12.     Paragraph 12 is admitted in part and denied in part.  Paragraph 12 is admitted in so far as it accurately describes that Ruby Dog is titleholder of the same property and related real property interest as was conveyed to ABAS by Snowshoe Company in the June 28, 1979 deed.  It is admitted also that Ruby Dog owns the Corduroy Inn.  Any remaining allegations not admitted specifically are denied.

13.     After reasonable investigation, Ruby Dog is without sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 13 relating to the bankruptcy of Plaintiff's predecessor.

14.     After reasonable investigation, Ruby Dog is without sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 14 relating to the bankruptcy of Plaintiff's predecessor.

15.     After reasonable investigation, Ruby Dog is without sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 15 relating to the bankruptcy of Plaintiff's predecessor.

16.     After reasonable investigation, Ruby Dog is without sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 16 relating to the bankruptcy of Plaintiff's predecessor.

17.     Ruby Dog is without sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 17 relating to the relationship between Plaintiff and entities allegedly called Snowshoe Resort, Inc. and Snowshoe Resort Management, Inc.

18.     It is admitted that Plaintiff (Snowshoe Mountain, Inc.) is the successor to all real property interests and obligations binding Snowshoe Company under the June 28, 2979 deed.  Any allegations not admitted specifically are denied.

19.     Paragraph 19 is denied as written.  There are three ski areas located on Snowshoe Mountain: Silver Creek, the Basin, and the Western Territory.  The Basin and Western Territory are accessible through the same lift ticket and are located close enough that a guest need not drive or leave the ski area.  By contrast, the Silver Creek area is not accessible without leaving the main Snowshoe Mountain ski area and driving to access that part of the mountain. Lift tickets purchased for Snowshoe's main area (Basin and Western Territory) will also grant access to Silver Creek. Alternatively, a lift ticket granting only access to Silver Creek can be purchased.

20.     Paragraph 20 is admitted in part and denied in part.  It is admitted that SMI instituted lift ticket capacity limits at Snowshoe Mountain Ski Resort sometime around the beginning of the COVID-19 pandemic.  Those lift ticket capacity limits are in place today.  Ruby Dog denies the remainder of the paragraph.

21.     After reasonable investigation, Ruby Dog is without sufficient information or knowledge to form a belief as to the truth of Plaintiff's stated motivation or process for limiting skier capacity at Snowshoe Resort.

22.     Paragraph 22 is admitted in part and denied in part.  It is admitted that Plaintiff provides guaranteed lowest rate ski tickets and guaranteed lift tickets to access both Snowshoe Basin and Silver Creek areas, even once the Snowshoe Basin is at capacity, to guests who book lodging through Plaintiff's website and guest services.  Any averments not specifically admitted are denied.

23.     Paragraph 23 is admitted in part and denied in part.  It is admitted that SMI has attempted to condition the privilege of the lift ticket guarantee despite the deed covenant not containing or allowing such a condition.  It is further admitted that SMI has required a fee be paid to make available to property owners whose deed contains the deed covenant the same privileges SMI provides to guests who book lodging through its website and guest services.  Any averment not specifically admitted is denied.

24.     Paragraph 24 is admitted in part and denied in part.  It is admitted that on November 7, 2022, Ruby Dog sent a cease and desist letter to Plaintiff.  Plaintiff's characterization of that letter is denied.

25.     Paragraph 25 is admitted in part and denied in part.  It is admitted that Ruby Dog contends that the deed covenant at issue runs with the land.  It is denied that the so-called "Recreational Facilities Agreement" covenant does not run with the land.  Any averment not specifically admitted is denied.

26.     Paragraph 26 is admitted in part and denied in part.  Ruby Dog admits that it contends that SMI has breached, and is breaching, the so-called "Recreational Facilities

Agreement" by not extending that privilege to Ruby Dog's "guests" and others as required by the deed covenant. Any allegation not specifically admitted is denied.

27.     Paragraph 27 is admitted in part and denied in part. Ruby Dog admits that it contends the so-called "Recreational Facilities Agreement" obligates SMI to provide all of Ruby Dog's guests at the Corduroy Inn and Lodge the privilege of the Lift Ticket Guarantee. Any allegation not specifically admitted is denied.

28.     Paragraph 28 is denied as stated. Ruby Dog admits that it sent a cease and desist letter which explained its position and requested compliance by SMI with the governing deed covenant , e.g., that the lift ticket guarantee and lowest ticket price guarantee extended to guests of the Corduroy Inn and Lodge so that they were provided the same privileges as guests of the Snowshoe Resort. Any allegation not specifically admitted is denied.

## COUNT I – DECLARATORY JUDGMENT

29.     Ruby Dog incorporates by reference is responses to Paragraphs 1–28 as if fully restated herein.

30.     Ruby Dog admits that the quoted language in Paragraph 30 appears in the text of West Virginia's Uniform Declaratory Judgment Act. Any allegation not specifically admitted is denied.

31.     Ruby Dog admits that the quoted language in Paragraph 31 appears in the text of West Virginia's Uniform Declaratory Judgment Act. Any allegation not specifically admitted is denied.

32.     Ruby Dog admits that the quoted language in Paragraph 32 appears in the text of West Virginia's Uniform Declaratory Judgment Act. Any allegation not specifically admitted is denied.

33.     Ruby Dog admits that the rights of the parties pursuant to the deed covenant must be confirmed and declared.  Any allegation not specifically admitted is denied.

34.     Ruby Dog admits that there is an actual and justiciable controversy as to the deed covenant.  Any allegation not specifically admitted is denied.

35.     Paragraph 35 is denied.

36.     Paragraph 36 is denied.

37.     Ruby Dog admits that the quoted language in Paragraph 37 appears in the deed. However, Plaintiff's interpretation of this language is denied.  Any averment not specifically admitted is denied.

38.     Paragraph 38 is denied.  Moreover, the averments in Paragraph 38 constitute conclusions of law to which no response is required.

39.     Ruby Dog admits that the quoted language in Paragraph 39 appears in the deed. However, Plaintiff's interpretation of this language is denied and any attempt to characterize the deed language by Plaintiff is specifically denied.  Any averment not admitted is denied.

40.     Paragraph 40 is admitted in part and denied in part.  It is admitted that the covenant Plaintiff has characterized as the "Recreational Facilities Agreement" does not state "successors and assigns."  It is denied that such language is required for the "Recreational Facilities Agreement" to run with the land or be enforceable against SMI by Ruby Dog.  Any allegation not admitted is denied.

41.     Paragraph 41 is denied.

42.     Paragraph 42 is denied.

43.     The averments in Paragraph 43 constitute conclusions of law to which no response is required.  To the extent that a response is required, it is denied.

44.    The averments in Paragraph 44 constitute conclusions of law to which no response is required.  To the extent that a response is required, it is denied.

45.    Paragraph 45 is denied.

46.    Paragraph 46 is denied.

47.    Paragraph 47 is denied.

48.    Paragraph 48 is denied.

49.    Paragraph 49 is denied.

50.    Paragraph 50 is denied.

51.    Paragraph 51 is admitted and denied.  It is admitted that a personal covenant may be created by a specific agreement in a deed related only to an individual person.  It is denied that a personal covenant exists here or is relevant to analysis of the covenant at issue here.  Any averment not specifically admitted is denied.

52.    Paragraph 52 is denied.

53.    Paragraph 53 is denied.

54.    Paragraph 54 is denied.

## COUNT II – DECLARATORY JUDGMENT

55.    Ruby Dog incorporates by reference is responses to Paragraphs 1–54 as if fully restated herein.

56.    Paragraph 56 is admitted in part and denied in part.  It is admitted that Plaintiff seeks a declaration that it has not breached the "Recreational Facilities Agreement."  It is denied that Plaintiff is entitled to such a declaration.  Any allegation not specifically admitted is denied.

57.    Paragraph 57 is admitted in part and denied in part.  The general rule that Plaintiff characterizes in Paragraph 57 is admitted in so far as it articulates that unrestricted use of land is

favored.  It is denied that this general rule applies here.  Any allegation not specifically admitted is denied.

58.    Plaintiff's characterization of the law in Paragraph 58 is denied.  Paragraph 58 is further denied insofar as it alludes to application in favor of Plaintiff's interpretation of the covenant against Ruby Dog as Plaintiff's predecessor was the drafter of the deed covenant.

59.    Paragraph 59 is denied.

60.    Paragraph 60 is denied.

61.    Paragraph 61 is denied.

62.    Paragraph 62 is denied.

63.    Paragraph 63 is admitted in part and denied in part.  It is admitted that Snowshoe Resort does not offer the Lift Ticket Guarantee to residential homeowners at the Snowshoe Resort. It is denied that the deed covenant contained in certain landowners' deeds requires booking through the Snowshoe Resort in order to receive the same privileges extended to guests at Snowshoe Resort.  Any allegation not specifically admitted, is denied.

64.    Paragraph 64 is denied.

## **PRAYER FOR RELIEF**

WHEREFORE, Ruby Dog denies that Plaintiff is entitled to the relief requested in the Complaint.  To the contrary, this Court should enter judgment against Plaintiff and in favor of Ruby Dog on the Complaint and the Counterclaims Ruby Dog asserts below, awarding Ruby Dog both declaratory judgment to enforce the deed covenant and monetary damages arising out of Plaintiff's breach of the relevant deed and its related tortious behavior.

## AFFIRMATIVE DEFENSES

Subject to and without waiving the denials contained in the foregoing paragraphs, Ruby Dog hereby states the following affirmative defenses:

65.     SMI fails to state a claims on which relief can be granted.

66.     SMI's claims for declaratory judgment are barred by the doctrine of estoppel.

67.     SMI's claims for declaratory judgment are barred by the doctrine of unclean hands.

68.     SMI's claims for declaratory judgment are barred by the doctrine of waiver.

69.     SMI's claims are barred by the applicable statutes of limitation.

70.     SMI's assertion of a right to attorneys' fees is not supported by contract, statute, or law.

71.     SMI's claims for declaratory judgment are contrary to public policy.

## RESERVATION

Ruby Dog reserves the right to amend this Answer and Affirmative Defenses to raise additional affirmative defenses that may become apparent during the investigation of this case or through the discovery process.

## RUBY DOG'S COUNTERCLAIMS AGAINST PLAINTIFF

Defendant and Counterclaim Plaintiff Ruby Dog brings the following counterclaims against Plaintiff and Counterclaim Defendant Snowshoe Mountain, Inc., on behalf of itself, and on behalf of the Proposed Class, as defined herein, and alleges, upon personal knowledge and upon information and belief as to all matters, as follows:

## INTRODUCTION

1.     The following Counterclaims concern the interpretation of the same deed covenant presented in SMI's Complaint for Declaratory Relief, defined herein as the "Privileges Covenant,"

and arise because of SMI's failure to extend certain privileges (e.g., the Preferred Ticket Program, defined in ¶¶ 61 et seq., *supra*) to Ruby Dog, individually, and to members of the Proposed Class.

A. **The Parties**

2.    Counterclaim Plaintiff Ruby Dog is a limited liability company that owns real property, together with the improvements thereon, located at 5811 Snowshoe Drive, Snowshoe, West Virginia 26209 ("Ruby Dog Property"), located nearby the Snowshoe Mountain Ski Resort ("Resort").

3.    Ruby Dog owns the Corduroy Inn and Lodge, which is constructed on the Ruby Dog Property.

4.    KLB Real Estate LLC ("KLB") leases the Corduroy Inn and Lodge from Ruby Dog Holdings LLC.

5.    KLB Real Estate LLC operates the day to day operations of the Corduroy Inn and Lodge and receives the revenue from bookings at the Corduroy Inn and Lodge, a percentage of which revenue is paid to Ruby Dog Holdings LLC (once stipulated annual revenue thresholds are reached), in addition to base rental payments.

6.    Similarly, the food and beverage institutions located within the Corduroy Inn and Lodge are owned by Ruby Dog Holdings LLC, but are operated by a separate legal entity know as Ruby Dog LP ("the F&B Operator").

7.    The F&B Operator pays a portion of its revenue to Ruby Dog Holdings LLC pursuant to an agreement between those entities, once stipulated annual revenue thresholds are reached.

8.      The Corduroy Inn and Lodge is located on Snowshoe Mountain, as are several other types of accommodations and residential units, such as independently-owned condominiums and individual residences, the majority of which are rented to vacationers coming to the mountain.

9.      SMI is a West Virginia corporation that, itself and, upon information and belief, through affiliated companies, is the (i) owner and operator of the ski slopes and related land on which outdoor activities occur and (ii) lessor and manager of several business and lodging properties located in the Resort and surrounding areas of Snowshoe Mountain.

10.     At the Resort, SMI offers a wide variety of skiing and snowboarding opportunities, restaurants, shopping, and other amenities.

11.     The Resort has approximately 244 acres of skiable terrain.

12.     The skiable terrain includes both the "Snowshoe Mountain" and "Silver Creek" ski areas.

13.     There are approximately 60 slopes and trails plus many acres of backcountry skiing available.

14.     Also located within the Resort is The Village, a centrally located shopping, dining, and lodging location on Snowshoe Mountain.

15.     In or around Snowshoe Mountain, there are approximately 2,000 condominium and lodge hotel units, most of which are independently owned.

16.     SMI manages some of those condominiums and units.

17.     The Corduroy Inn and Lodge is located on Snowshoe Mountain but is not managed by SMI.

B.     __Relevant Deed Transfers__

18.     Ruby Dog acquired title to the Ruby Dog Property by virtue of a deed from The Whistlepunk Company, Inc., dated December 19, 2013, and recorded December 23, 2013, in the Office of the County Clerk of Pocahontas County, West Virginia ("Recorder's Office") in Deed Book 345, p. 432, and by deed from Snowshoe dated April 17, 2014, and recorded April 24 ,2014, in the Recorder's Office in Deed Book 348, p. 21 (1,881 sq. ft., more or less).

19.     The chain of title to the vesting deed at Deed Book 345, p. 432 discloses the following prior conveyances:

- ABAS, a general partnership, to The Whistlepunk Company, Inc., by deed dated June 1, 1981, and recorded in the Recorder's Office in Deed Book 159, p. 145; and,

- Snowshoe Company, a West Virginia corporation, to ABAS, a general partnership, by deed dated June 28, 1979, and recorded in the Recorder's Office in Deed Book 150, p. 231 (*See* Exhibit A to Complaint)

20.     The deed between Snowshoe Company to ABAS, dated June 28, 1979, contains the following covenant (the "Privileges Covenant"):

> As a part of this conveyance, Snowshoe Company covenants and agrees that all guests of any hotel or lodge constructed on the property hereby conveyed and all purchasers of residence units constructed on such property shall have, receive and be entitled to all such amenities and privileges, respecting the recreational facilities of the Snowshoe Resort, as are or may in the future be extended by Snowshoe Company to other residents, invitees and guests of the Snowshoe Resort.

(*See* Exhibit A to Complaint).

13

21.    The Privileges Covenant is the provision at issue in SMI's complaint for declaratory judgment and supports Ruby Dog's counterclaims, brought on behalf of itself and the members of the Proposed Class.

22.    SMI is the successor-in-interest of Snowshoe Company, the original grantor of the Privileges Covenant.

23.    SMI, as the successor-in-interest of Snowshoe Company, is bound by the Privileges Covenant.

24.    Ruby Dog is the successor-in-interest to ABAS, the original grantee of the Privileges Covenant.

25.    Ruby Dog, as the successor-in-interest of ABAS, is entitled to the benefits conferred through the Privileges Covenant.

26.    On information and belief, the members of the Proposed Class (defined below) also have the same or materially similar Privileges Covenant in their title history.

## JURISDICTION AND VENUE

27.    Counterclaim Plaintiff, individually, and on behalf of all members of the Proposed Class, hereby incorporates Paragraphs 1–26 of its Counterclaims as if the same were set forth at length herein.

28.    This Court has subject matter jurisdiction over the claims raised by Ruby Dog individually and raised on behalf of the Proposed Class based on diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a).

29.    Ruby Dog is a limited liability company, thus its citizenship is determined by the domicile of its members.

30.    Ruby Dog's members are domiciled in Arizona and Florida.

31.    Ruby Dog is a citizen of Arizona and Florida.

32.    SMI is a West Virginia corporation with its principal place of business in West Virginia.

33.    SMI is a citizen of West Virginia.

34.    There is diversity of citizenship between Ruby Dog and SMI.

35.    Further, the amount in controversy here between Ruby Dog and SMI exceeds $75,000.00 because the value of the object of this litigation—i.e. the value to "either party" of the disputed covenant–exceeds $75,000.00.

36.    This Court also has subject matter jurisdiction over the class claims alleged in the following Counterclaims pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

37.    This Court has personal jurisdiction over SMI as Counterclaim Defendant because it consented to such jurisdiction when it filed the Complaint, in response to which these Counterclaims are presented, in the Court of Common Pleas for Pocahontas County, West Virginia and did not object to removal to this Court pursuant to 28 U.S.C.S. § 1446 as the district court for the United States for the district in which that Complaint was filed.

38.    Further, SMI has done, is authorized to do, and does business within this state and District, purposefully availing itself of the market of this state and District, and has sufficient minimum contacts with this state and District.

39.    Venue is proper in this District under 28 U.S.C.S. § 1391 because SMI conducts substantial business within this District and it is a citizen of West Virginia.

40.    Additionally, venue is proper because all of the events giving rise to this action occurred in, and the property that is the subject of these Counterclaims is located within, this District.

## CLASS ACTION ALLEGATIONS

41.    The Proposed Class consists of:

All property owners or purchasers of residential units who have in their deed, expressly, by reference, or by operation of law, the same or materially similar language to the following:

> As a part of this conveyance, Snowshoe Company covenants and agrees that all guests of any hotel or lodge constructed on the property hereby conveyed and all purchasers of residence units constructed on such property shall have, receive and be entitled to all such amenities and privileges, respecting the recreational facilities of the Snowshoe Resort, as are or may in the future be extended by Snowshoe Company to other residents, invitees and guests of the Snowshoe Resort.

42.    Ruby Dog brings the class action counterclaims pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of all members of the Proposed Class. *See* FED. R. CIV. P. 23.

43.    Specifically, Rule 23 requires that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).

44.    Rule 23 requires further requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2).

45.    The final two requirements of Rule 23 are typicality and adequacy. FED. R. CIV. P. 23(a)(3)–(4).

46.    Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and adequacy requires that "the representative parties will fairly and adequately protect the interest of the class." *Id*.

47.    **Numerosity.** Joinder of all individual members of the Proposed Class members would be impracticable because, on information and belief, there are at least 766 potential members of the Proposed Class.

48.    **Commonality.** Pursuant to Federal Rule of Civil Procedure 23(a)(2) there are questions of law or fact common to Ruby Dog and members of the Proposed Class because resolution as to the legal meaning of the deed covenant at issue impacts the property rights of all class members.

49.    Upon information and belief, SMI acted similarly to the entire class, by refusing to extend unconditionally the same privileges and amenities to all those entitled to it under the deed covenant.

50.    Additionally, on information and belief, the nature of the damages resulting from SMI's breach of the deed covenant and tortious interference with existing and prospective contractual relations is common to Ruby Dog and all members of the Proposed Class.

51.    **Typicality**. Ruby Dog's counterclaims are typical of all members of the proposed class because its counterclaims arise out of and dispute the following: SMI's attempts to declare the meaning of the Privileges Covenant, SMI's breach of that deed, and SMI's unjustifiable interference with the ability to conduct business fairly on Snowshoe Mountain, which harms both Ruby Dog and the members of the Proposed Class.

52.    **Adequacy.** Ruby Dog fairly represents and adequately can protect the members of the Proposed Class because its interests in defining the deed covenant, recovering on breach of

contract, and recovering damages for SMI's wrongful and tortious conduct aligns with the interests of the Proposed Class.

53.     Additionally, Ruby Dog is represented by experienced counsel.

54.     Finally, a class action may be maintained because the circumstances outlined under Rule 23(b) exist here.

55.     In particular, Rule 23(a) is satisfied because prosecuting separate actions by each of the individual members of the Proposed Class "would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for [SMI]." FED. R. CIV. P. 23(b)(1)(A).

56.     Additionally, or alternatively, under Rule 23(b) SMI "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2).

57.     Additionally, or alternatively, under Rule 23(b) there are common questions of law and fact common to all class members which predominate over the individual questions that affect each member. FED. R. CIV. P. 23(b)(3).

58.     Alternatively, Ruby Dog brings these class action counterclaims on behalf of itself and the Proposed Class pursuant to and in compliance with the jurisdictional requirements of CAFA. *See* 28 U.S.C.S. § 1332(d).

59.     **Diversity of Citizenship.** CAFA requires minimal diversity, which is defined as "any member of a class of plaintiffs is a citizen of a state different from any defendant." *See* 28 U.S.C.S. § 1332(d)(2)(A).

60.     Ruby Dog is a member of the proposed class of plaintiffs.

61.    Ruby Dog is a limited liability company, thus its citizenship is determined by the domicile of its members.

62.    Ruby Dog's members are domiciled in Arizona and Florida.

63.    Ruby Dog is a citizen of Arizona and Florida.

64.    SMI is the defendant in the proposed class action.

65.    SMI is a West Virginia corporation with its principal place of business in West Virginia.

66.    SMI is a citizen of West Virginia.

67.    There is diversity between at least one class plaintiff (Ruby Dog) and one class defendant (SMI).

68.    Thus, there is minimal diversity as required by CAFA.

69.    **Numerosity/More Than 100 Putative Class Members.**  Ruby Dog brings the class action counterclaims on behalf of a proposed class of all property owners and purchasers of residential units who have a covenant in their chain of title that is the same as or substantially similar to the Privileges Covenant.

70.    There are more than 2,000 such property owners or purchasers and, on information and belief, at least 38% (or at least 766) of the deeds for those owners or purchasers contain the Privileges Covenant or a substantially similar covenant.

71.    The joinder of all members of the Proposed Class is impracticable based on the number of members in the class.

72.    The precise number of Proposed Class members can be ascertained readily through a search of the publicly-available record of deeds for the subject parcels.

73.    **Amount in Controversy Exceeds $5 Million.**    The object of the declaratory judgment complaint brought by SMI is the deed covenant at issue which conveys rights and privileges entwined with hundreds of individually-owed pieces of commercial and personal real estate.

74.    Upon reasonable investigation and belief, SMI's multi-year breach of the subject deed, and SMI's acts of tortious interference, have had a substantial and significant effect on the revenue, goodwill, and property values of the Proposed Class, which damages exceed $5,000,000.

## FACTUAL BACKGROUND

75.    Counterclaim Plaintiff, individually and on behalf of all members of the Proposed Class, hereby incorporates Paragraphs 1–74 of its Counterclaims as if the same were set forth at length herein.

### A.    Nature of the Dispute

76.    This dispute arises out of the lift ticket capacity limit and guarantee program instituted by SMI (the "Preferred Ticket Program") as described in greater detail in the following paragraphs.

77.    Under the Preferred Ticket Program, SMI has provided and is providing its guests with discounted and guaranteed lift tickets while denying those privileges to guests of Ruby Dog's Corduroy Inn and Lodge as well as to the Proposed Class and their guests.

78.    This constitutes an ongoing breach of the deed covenant under which SMI is obligated to provide Ruby Dog and the Proposed Class's guests the same benefits and privileges that it provides its own guests.

79.    SMI's Preferred Ticket Program is in effect and actively being marketed and offered to its guests for the 2022–2023 ski season.

80.     Additionally, on information and belief, the Preferred Ticket Program was also in effect in the 2021–2022 ski season.

81.     Thus, Ruby Dog seeks, on behalf of itself and on behalf of the Proposed Class, an injunction directing SMI to extend the Preferred Ticket Program as required by the Privileges Covenant.

82.     The Preferred Ticket Program is causing immediate and irreparable harm to all members of the Proposed Class.

83.     In failing to extend the Preferred Ticket Program to Ruby Dog and the Proposed Class and their guests, SMI has breached, and continues to breach, the Privileges Covenant (or a substantially similar covenant) and has tortiously interfered, and is continuing to so interfere, with existing and prospective business contracts of both Ruby Dog and the Proposed Class.

84.     In light of Snowshoe's failure to fulfill its deed obligations and in light of its tortious conduct, Ruby Dog brings these counterclaims, seeking injunctive and legal relief, as well as monetary damages, on behalf of itself and the Proposed Class.

**B.      The Impact of the Privileges Covenant**

85.     Ruby Dog owns the Corduroy Inn and Lodge, which is located upon the Ruby Dog Property.

86.     After purchasing the property, Ruby Dog renovated the entire lodge that then existed on the property.

87.     After remodeling, the lodge contained only 12 rooms, in addition to a restaurant, bar, and coffee shop, the latter of which then became a brick oven pizza takeout shop.

88.     In November 2020, Ruby Dog expanded to include a new building on its property, containing an additional 30 rooms and a banquet hall.

21

89.     Thus, the Corduroy Inn and Lodge has 42 guest units and other amenities such as an on-site restaurant and ski-in, ski-out accommodations where guests directly can access the Resort.

90.     During the winter season, the vast majority of guests at the Corduroy Inn and Lodge and the other condominium and lodging units at Snowshoe Mountain stay there to ski and/or snowboard the Mountain and access the Resort.

91.     The Corduroy Inn and Lodge's business success, therefore, is linked directly to its guests being able to ski and/or snowboard at the Mountain.

92.     Because Ruby Dog owns the Corduroy Inn and Lodge and is entitled to receive a certain portion of the revenue proceeds generated from the operations thereof, Ruby Dog is entwined with the financial success of the Corduroy Inn and Lodge.

93.     Specifically, Ruby Dog relies on the success of the Corduroy Inn and Lodge to ensure its ability to maintain mortgage payments for and to conduct necessary upkeep to the Corduroy Inn and Lodge.

94.     The Corduroy Inn and Lodge's dependence on its guests having access to skiing and snowboarding on Snowshoe Mountain is further supported by the following non-exhaustive facts:

- The Corduroy Inn and Lodge attracts guests by advertising its location on Snowshoe Mountain;

- the majority of bookings at The Corduroy Inn and Lodge occur during the ski season; and,

- the reason that the vast majority of patrons visit Snowshoe Mountain Ski Resort is for the premier skiing and snowboarding available there.

95.     Ruby Dog, as successor-in-interest to ABAS and as owner of the Ruby Dog Property, is the holder and beneficiary of all covenants, conditions, and restrictions set forth in the Privileges Covenant intended to benefit the grantee therein and to run with the land.

96.     By its plain terms, the Privileges Covenant mandates that all guests of Ruby Dog's Corduroy Inn and Lodge (or any other "hotel or lodge constructed on the property") must be given all "privileges" that Snowshoe extends to the "residents, invitees and guests of the Snowshoe Resort."

97.     Additionally, the same "amenities and privileges" must be extended to the "purchasers of residence units" on any property conveyed.

98.     The language of the Privileges Covenant specifically links the right to receive the same privileges and amenities as residents, invitees, and guests of Snowshoe Mountain Ski Resort to ownership of the property or residential units conveyed and affords that right to guests of lodging developed and to owners of residential units constructed on the property conveyed.

99.     The Privileges Covenant does not state any limitation on transferability of that covenant.

100.     Nor does a limitation on transferability appear as to any other covenants in the deed.

101.     The Privileges Covenant does not state that the right to receive the same privileges and amenities as residents, invitees, and guests of Snowshoe Mountain is personal to the original grantee of the deeded property.

102.     There is no individual entity that is specifically or personally contemplated by the parties to the Privileges Covenant as being entitled to the benefit of the Privileges Covenant.

103.     The language of the Privileges Covenant, which is expressly incorporated into Ruby Dog's deed, contemplates that the owner of the property transferred by the 1979 Deed, which

includes Ruby Dog, is entitled to such privileges and amenities "as are or may in the future be extended."

104.    The burden imposed on Snowshoe Company (as original grantor) and the benefit appurtenant to the land purchased by ABAS (as original grantee) is incorporated in subsequent conveyances, and that benefit has continued on to benefit the subsequent owners of the estate originally transferred.

105.    The deeds of all subsequent owners of the estate originally transferred reference the covenant at issue and were recorded properly, placing SMI on notice of the running of the benefit to subsequent owners of the estate.

106.    On information and belief, the members of the Proposed Class own their property or residential units subject to the same or a substantially similar language as is contained in Privileges Covenant.

**C.    The Preferred Ticket Program**

107.    Upon information and belief, SMI's Preferred Ticket Program has been active and offered to Snowshoe's guests since at least the 2021–2022 ski season and possibly before.

108.    On or about October 3, 2022, SMI published an e-mail announcement which informed the recipients of an offer from Snowshoe to its guests.  (*See* Exhibit A to Counterclaims)

109.    This offer informed recipients that: "Guests that lodge through Snowshoe, at snowshoemtn.com [or by calling Snowshoe Mountain Inc.] . . . , are guaranteed the lowest lift ticket rate and will be guaranteed a ticket."

110.    Ruby Dog received this e-mail and first became aware of the Preferred Ticket Program at that time.

111.    Upon information and belief, SMI also communicated its offer of the Preferred Ticket Program to past and potential guests through other means, such as mailers, flyers, or direct solicitation.

**D.    SMI's Lift Ticket Sale Capacity Limits**

112.    In addition to offering its guests discounted lift tickets through the Preferred Ticket Program, the Preferred Ticket Program provides that guests are "guaranteed a ticket."

113.    This lift ticket guarantee is a reference to lift ticket capacity limits at Snowshoe Mountain Ski Resort.

114.    Since 2020, SMI has limited the total number of daily lift tickets available for purchase.

115.    Only a certain number of lift tickets are sold each day.

116.    If the designated number of tickets runs out, later attempts at purchasing a lift ticket (other than those in the Preferred Ticket Program) will fail.

117.    SMI's Preferred Ticket Program grants a privilege to guests who book lodging through SMI, guaranteeing them access to the mountain, irrespective of the capacity limitations.

118.    Guests of non-SMI lodgings do not have access to the privilege of the Preferred Ticket Program and, thus, are not guaranteed a lift ticket in connection with their booking.

119.    SMI admits on their Mountain Lodge website, "With firm capacity limits in place, walk-up access is not guaranteed." (*See* https://www.snowshoemtnlodge.com/wp-content/uploads/2020/09/Snowshoe-Winter-20.21-FAQ_9.14.20.pdf) (last visited 1/27/2023 at 9:18 am).

120.    Upon realizing that SMI was providing privileges to its guests that it was not also providing to guests of the Ruby Dog-owned Corduroy Inn and Lodge, Ruby Dog contacted Patti

Duncan, President and COO of SMI, and requested that the Preferred Ticket Program be extended to Ruby Dog's guests.

121.    SMI refused and continues to refuse to extend the Preferred Ticket Program to all guests at the Ruby Dog-owned Corduroy Inn and Lodge, thereby failing to honor SMI's obligations under the Privileges Covenant.

122.    On information and belief, the members of the Proposed Class are being denied the benefits and privileges extended by SMI through the Preferred Ticket Program.

123.    Thus, SMI does not extend to Ruby Dog or the Proposed Class members the same privileges it gives to its own guests, notwithstanding the Privileges Covenant or substantially similar covenant contained in relevant deeds.

124.    Because SMI does not extend its Preferred Ticket Program to guests of the Ruby Dog-owned Corduroy Inn and Lodge, bookings at the Corduroy Inn and Lodge are significantly below what they would be if SMI had lawfully offered the Preferred Ticket Program to its guests.

125.    As a result, at a minimum, Ruby Dog has been damaged through diminution of the real property value and from the loss of its portion of revenue arising out of the operations of the Corduroy Inn and Lodge.

126.    In addition to the harm to the real property interest and the other financial harm suffered individually by Ruby Dog, all members of the Proposed Class that are denied the same "privileges and amenities" as guests of the Snowshoe Mountain Resort are being harmed by SMI's improper conduct in the same manner as Ruby Dog.

## COUNTERCLAIM I –PRELIMINARY AND PERMANENT INJUNCTION

127.    Counterclaim Plaintiff, individually and on behalf of all members of the Proposed Class, hereby incorporates Paragraphs 1–126 of its Counterclaims as if the same were set forth at length herein.

128.    The Preferred Ticket Program is an amenity or privilege afforded to the guests of SMI.

129.    Under the terms of the Privileges Covenant (or substantially similar covenant) and related deeds, Ruby Dog, all guests of the Corduroy Inn and Lodge, members of the Proposed Class, and guests of the Proposed Class are entitled to the same amenities and privileges as guests of SMI.

130.    SMI has failed to extend the Preferred Ticket Program to Ruby Dog or the Proposed Class as required by the Privileges Covenant or other substantially similar covenant.

131.    SMI's failure to extend its Preferred Ticket Program to Ruby Dog, guests of the Corduroy Inn and Lodge, members of the Proposed Class, and the guests of the Proposed Class is a refusal to comply with an express deed covenant,

132.    The proper relief for such conduct is an injunction.

133.    In considering whether to issue injunctive relief, the Fourth Circuit weighs the following factors: "(1) likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) likelihood of harm to the defendant if the request is granted; (3) likelihood that the plaintiff will succeed on the merits; and (4) the public interest." *Candle Factory, Inc., v. Trade Assocs. Group*, 23 Fed. Appx. 134, 137 (4th Cir. 2001); *see also Camden-Clark Mem'l Hosp. Corp. v. Turner*, 575 S.E.2d 362, 366 (W.Va. 2002).

134.    Due to SMI's refusal to extend its Preferred Ticket Program, there is a likelihood of immediate and ongoing irreparable harm to Ruby Dog and the Proposed Class for several reasons.

135.    First, without access to the Preferred Ticket Program, Ruby Dog and the Proposed Class immediately are deprived of the full property interest deeded to them by their predecessors in interest, which incorporate the Privileges Covenant or a substantially similar covenant requiring Snowshoe to extend its guests' privileges to guests of lodgings constructed on the Ruby Dog Property and the property of the Proposed Class.

136.    The property interest arising from the Privileges Covenant at issue (or a substantially similar covenant) is a valuable and substantial right, any violation of which cannot be compensated by damages.

137.    Plaintiff's actions in excluding Ruby Dog and the Proposed Class from the Lift Ticket Guarantee Program is a knowing violation of the Privileges Covenant (or substantially similar covenant), which was designed to benefit the grantees, and which is tied directly to the ownership of the subject land, and deprives Ruby Dog and the Proposed Class of the full value and use of their land.

138.    Second, Ruby Dog's receipt of the percent of future bookings and income that it is entitled to from the Corduroy Inn and Lodge are in jeopardy as long as the Preferred Ticket Program is not extended to guests of the Corduroy Inn and Lodge.

139.    The same or substantially similar harm is suffered by all members of the Proposed Class because guests have a substantial incentive to book lodging through SMI so that they can purchase lower-priced, and guaranteed, lift tickets, and not run the risk of being denied access to the Mountain, the very purpose for them coming to Snowshoe in the first place.

140.    Once guests lodge through SMI, the likelihood of them returning to lodge at Corduroy Inn and Lodge or another lodge or unit owned by members of the Proposed Class is dramatically reduced, further harming the good will of Ruby Dog, individually, and the Proposed Class, as a whole.

141.    Third, the goodwill and future value of the Corduroy Inn and Lodge, which is owned by Ruby Dog, the ability of Ruby Dog to sustain the Corduroy Inn and Lodge as a going concern, and the goodwill, future value, and sustenance as a going concern as to the property owners and purchasers of residential units who make up the Proposed Class, are in jeopardy from the lack of access to the Preferred Ticket Program.

142.    For example, upon information and belief, projected revenues based on current bookings at The Corduroy Inn and Lodge have declined by 15% year over year last winter to current winter (2022–2023).

143.    Moreover, on information and belief, revenue has declined 40% compared to projections that were completed by Ruby Dog in 2019, completed in preparation for the expansion and development of the Corduroy Inn and Lodge.

144.    The Preferred Ticket Program is ongoing and is becoming more widely known the longer it is in effect.

145.    The existence of the Preferred Ticket Program is particularly detrimental to the Corduroy Inn and Lodge because of the expansion of the Corduroy Inn and Lodge that Ruby Dog invested in and made effective in November 2020.

146.    Ruby Dog relied on the existence of the Privileges Covenant in deciding to expand its development to become the Corduroy Inn and Lodge that exists today.

147.    Moreover, Ruby Dog's decision to purchase the property on which the Corduroy Inn and Lodge sits in 2013 was done in reliance on the existence and anticipated application of the Privileges Covenant.

148.    Upon information and belief, the fact that guests of the Corduroy Inn and Lodge and other members of the Proposed Class do not have access to the Preferred Ticket Program has caused cancellations and others not to book at the Corduroy Inn and Lodge or at the lodging of the Proposed Class.

149.    Besides the actual loss of booking and associated revenue, the reduced revenue as a result of the Preferred Ticket Program has caused a significant reduction in the Corduroy Inn and Lodge's Net Operating Income.

150.    Reduction in the Net Operating Income jeopardizes Ruby Dog's ability to make mortgage payments for the property and impacts the ability for the Corduroy Inn and Lodge to continue functioning as a viable business venture that Ruby Dog undertook in reliance on the Privileges Covenant.

151.    Upon information and belief, the members of the Proposed Class also have suffered a similar loss in Net Operating Income.

152.    Guests of the Corduroy Inn and Lodge and guests of the Proposed Class are entitled to the same privileges as guests of SMI-owned accommodations and are immediately being deprived of those privileges just as Ruby Dog is being deprived of the commercial value of its property on which the Corduroy Inn and Lodge is located.

153.    An injunction enforcing the Privileges Covenant (and substantially similar covenants) is not a harm.

154.     Instead, it would enforce the rights and expectations related to the operative deeds and covenants.

155.     There is a high likelihood that Ruby Dog and the Proposed Class will succeed on the merits of their claims for legal relief related to SMI's breaches of the deed covenant language.

156.     The covenant language at issue obligates SMI to provide the guests of Ruby Dog's Corduroy Inn and Lodge and the guests and unit owners of the Proposed Class the same privileges as SMI provides to its guests.

157.     SMI has not and will not fulfill this obligation based on its own statements and as demonstrated by SMI filing its own Complaint for Declaratory Relief in response to Ruby Dog's attempt at resolving this matter without judicial intervention.

158.     SMI's conduct to date amounts to a breach of the deed covenant language, among other harms, and Ruby Dog, individually, along with the Proposed Class, as a whole, are likely to succeed on the merits of their claims for relief related to the covenant at issue.

159.     Finally, it is beneficial to the public interest for this Court to give meaning to the language of deed covenants and to hold grantors to the language of covenants they (and their predecessors-in-interest) drafted.

160.     Additionally, it would be against the public interest to allow SMI to have an unfair competitive advantage in contravention of the property rights granted by the operative covenant language

161.     Thus, all factors that this Court should consider in weighing whether to grant Ruby Dog's request, on behalf of itself and of all members of the Proposed Class, for an injunction weigh in favor of granting injunctive relief, both preliminarily and permanently.

WHEREFORE, Ruby Dog respectfully requests, individually and on behalf of all members of the Proposed Class, that this Court grant its request for preliminary injunctive relief compelling SMI immediately to comply with the language of the Privileges Covenant (or substantially similar covenant) and extend the Preferred Ticket Program to Ruby Dog, guests of the Ruby Dog owned Corduroy Inn and Lodge, and to guests or unit owners of the Proposed Class.  Additionally, Ruby Dog requests, individually and on behalf of all members of the Proposed Class, that this Court order SMI immediately to take all steps necessary to implement Ruby Dog and the Proposed Class's access to the Preferred Ticket Program within seven (7) days of the Court's order granting injunctive relief.

Additionally, Ruby Dog respectfully requests, individually and on behalf of all members of the Proposed Class, that this Court issue a permanent injunction ordering Snowshoe to extend the Preferred Ticket Program, and any other privileges or amenities offered to SMI's guests, to Ruby Dog, guests of Ruby Dog's lodgings, and the guests or unit owners of Proposed Class members.

## COUNTERCLAIM II – DECLARATORY JUDGMENT

162.    Counterclaim Plaintiff, individually and on behalf of all members of the Proposed Class, hereby incorporates Paragraphs 1–161 of its Counterclaims as if the same were set forth at length herein.

163.    "When a deed expresses the intent of the parties in clear and unambiguous language, a court will apply that language without resort to rules of interpretation or extrinsic evidence." *Gastar Expl. Inc. v. Rine*, 806 S.E.2d 448, 454–55 (W.Va. 2017).

164.    However, where there is an ambiguity, construction of restrictive covenants are to be strictly construed against the grantor—here, SMI (by its predecessor-in-interest).  *See Meadows*

*v. Belknap*, 483 S.E.2d 826 (W.Va. 1997) (where there is an ambiguity, "deed reservations are strictly construed against a grantor and in favor of a grantee").

165.    "Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, 'may declare relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Penn-Am. Ins. Co v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting 28 U.S.C. § 2201(a)).

166.    This suit concerns the Privileges Covenant (or substantially similar covenants), excerpted below, which is found in the 1979 deed between ABAS (Ruby Dog's predecessor-in-interest) and Snowshoe Company (SMI's predecessor-in-interest):

> As a part of this conveyance, Snowshoe Company covenants and agrees that all guests of any hotel or lodge constructed on the property hereby conveyed and all purchasers of residence units constructed on such property shall have, receive and be entitled to all such amenities and privileges, respecting the recreational facilities of the Snowshoe Resort, as are or may in the future be extended by Snowshoe Company to other residents, invitees and guests of the Snowshoe Resort.

167.    This covenant requires Snowshoe to extend to Ruby Dog, Ruby Dog's guests, i.e. those guests staying at the Corduroy Inn and Lodge, and guests or unit owners of all members of the Proposed Class, the same amenities and privileges that SMI extends to its guests, including SMI's Preferred Ticket Program.

168.    Under the Declaratory Judgments Act, this Court may declare the rights, status, and legal relations emanating from the above deed covenant.

169.    Declaratory judgment defining the legal rights of Ruby Dog individually, and of the Proposed Class as a whole, and the obligations of SMI under the above covenant will aid in this Court's adjudication of this case and will serve to prevent future disputes between the Parties relating to the covenant.

WHEREFORE, Ruby Dog respectfully requests, individually and on behalf of members of the Proposed Class, that this Court enter a judgment declaring that the above deed covenant at issue:

- Obligates SMI to provide to Ruby Dog, all of Ruby Dog's guests, and to all guests and unit owners of the Proposed Class the same privileges and amenities SMI offers its guests;

- That the covenant applies to the Preferred Ticket Program; and,

- That, as a result, SMI is required to comply with the covenant.

## COUNTERCLAIM III – BREACH OF DEED COVENANT

170.    Counterclaim Plaintiff, individually and on behalf of all members of the Proposed Class, hereby incorporates Paragraphs 1–169 of its Counterclaims as if the same were set forth at length herein.

171.    SMI's refusal to extend the Preferred Ticket Program to Ruby Dog, guests at the Corduroy Inn and Lodge, and to guests and unit owners of the Proposed Class is a breach of the aforementioned Privileges Covenant (or substantially similar covenants).

172.    In West Virginia, deeds and their covenants are subject to the principles of interpretation and construction that govern contracts generally. *See Faith United Methodist Church v. Morgan*, 231 W.Va. 234 (W.Va. 2013).

173.    The Privileges Covenant was incorporated into all operative deeds and throughout the chain of title among and between SMI and Ruby Dog.

174.    Upon information and belief, the members of the Proposed Class are subject to the same or substantially similar covenant from SMI or a predecessor in interest as the Privileges Covenant.

175.    SMI has a duty under the aforementioned covenant and operative deeds to extend all privileges and amenities it gives its guests to Ruby Dog, guests at the Corduroy Inn and Lodge, and to the guests or owners that make up the members of the Proposed Class.

176.    SMI's refusal to extend the Preferred Ticket Program to Ruby Dog, guests at the Corduroy Inn and Lodge, and to members and guests of the Proposed Class, as is required by the Privileges Covenant or substantially similar covenant, is a breach of the deed covenant.

177.    Ruby Dog, and members of the Proposed Class, as the beneficiaries of the aforementioned covenant, have been damaged by SMI's breach of that covenant.

178.    Ruby Dog's damages include, but are not limited to, loss of the revenue it is entitled to from operations of the Corduroy Inn and Lodge and loss of goodwill and business/property value.

179.    Upon information and belief, members of the Proposed Class have suffered damages including, but not limited to, loss of sales and revenue and loss of goodwill and business/property value.

WHEREFORE, Ruby Dog respectfully requests, individually and on behalf of members of the Proposed Class, that this Court award it damages for the harm Ruby Dog has suffered as a result of SMI's breach of covenant and any other relief the Court deems proper.

## COUNTERCLAIM IV – TORTIOUS INTERFERENCE
## WITH EXISTING CONTRACTUAL RELATIONS

180.    Counterclaim Plaintiff, individually and on behalf of all members of the Proposed Class, hereby incorporates Paragraphs 1–179 of its Counterclaims as if the same were set forth at length herein.

181.    On information and belief, guests who had booked to stay at the Corduroy Inn and Lodge canceled their stays because they were not guaranteed the ability to ski or snowboard at the Resort, which is a main purpose in booking a stay at these lodgings.

182.    On information and belief, the members of the Proposed Class have suffered from cancelled reservations or rentals because they could not offer the privilege of a guaranteed ability to ski or snowboard at the Resort.

183.    SMI's refusal to grant Ruby Dog, guests at the Corduroy Inn and Lodge, and the guests or unit owners of the Proposed Class access to the Preferred Ticket Program was intentional and unjustified because it violated the aforementioned Privileges Covenant or substantially similar covenant applicable to the members of the Proposed Class.

184.    Additionally, SMI's interference with Ruby Dog's and the Proposed Class's existing contractual relations is malicious and done with the motive to force Ruby Dog and members of the Proposed Class to become part of SMI's property management program.

185.    The loss of bookings, and resulting loss of revenue, was caused by SMI's intentional interference with contracts those guests.

186.    Ruby Dog and the members of the Proposed Class have suffered damages as a result of SMI's tortious interference.

187.    Specifically, as to Ruby Dog, Ruby Dog has lost the portion of revenue it would have received pursuant to agreements with the operators of the Corduroy Inn and Lodge and food

and beverage amenities located in the Corduroy Inn and Lodge because SMI interfered with contracts between guests of the Corduroy Inn and Lodge and those operators.

188.    Additionally, and alternatively, SMI's conduct has tortiously interfered with the existing contractual relationship between Ruby Dog and the operators of the Corduroy Inn and Lodge and its food and beverage facilities.

189.    Ruby Dog is entitled to portions of the revenue from the Corduroy Inn and Lodge from the operators of its facilities based on an agreement between Ruby Dog and those operators.

190.    Ruby Dog has lost revenue that it was entitled to receive from these operators because of the cancellations by existing guests' bookings, which were cancelled due to SMI's refusal to extend the Preferred Ticket Program to guests at the Corduroy Inn and Lodge.

WHEREFORE, Ruby Dog respectfully requests, individually and on behalf of the members of the Proposed Class, that this Court award it damages for the harm resulting from SMI's tortious interference including consequential damages, punitive damages, attorneys' fees, and other relief the Court deems proper.

## COUNTERCLAIM V – TORTIOUS INTERFERENCE WITH PROPSECTIVE CONTRACTUAL RELATIONS

191.    Counterclaim Plaintiff, individually and on behalf of all members of the Proposed Class, hereby incorporates Paragraphs 1–190 of its Counterclaims as if the same were set forth at length herein.

192.    Upon information and belief, individuals that otherwise would have entered into contracts to stay as guests at the Ruby Dog-owned Corduroy Inn and Lodge decided not to do so because SMI unjustifiably and intentionally proclaimed, via the Preferred Ticket Program, that only those who book lodging through SMI will have guaranteed access to ski or snowboard at Snowshoe Mountain.

193.    Additionally, upon information and belief, individuals have decided not to book at the Corduroy Inn and Lodge due to SMI's discount lift ticket privilege which is not provided unconditionally to guests at the Corduroy Inn and Lodge.

194.    Further, upon information and belief, individuals who otherwise would have entered into contracts to rent an individual residential unit owned by members of the Proposed Class decided not to do so because SMI unjustifiably and intentionally proclaimed, via the Preferred Ticket Program, that only those who book lodging through SMI will be afforded guaranteed access to ski or snowboard at Snowshoe Mountain.

195.    Likewise, upon information and belief, individuals have decided not to book or rent a stay in an individual residential unit owned by members of the Proposed Class because SMI's discount lift ticket privilege was not provided to guests of those establishments.

196.    There are no legitimate business justifications for SMI's conduct, and to the extent there are, they can be achieved through less restrictive and less anticompetitive means.

197.    SMI continues to place capacity restrictions on the number of ski lift tickets it will sell per day.

198.    Ostensibly implemented during the pandemic as a safety measure, there no longer is any need for such capacity limiting measures, considering the Resort operated successfully for 45 years without capacity controls.

199.    SMI claims that capacity restrictions improves guest experience.

200.    Such a claim is undermined by the fact that it did not implement such restrictions prior to the 2020–2021 season.

201.    And if such a justification is true, then there is no justification for SMI to guarantee lift tickets to only those who lodge through SMI.

202.    The only reason for SMI to do so is to dissuade would-be guests from lodging at non-SMI managed units, like Ruby Dog's Corduroy Inn and Lodge.

203.    Indeed, SMI sent out emails and, upon information and belief, otherwise publicized its implementation of capacity restrictions and that "[l]ift access is guaranteed for season passholders as well as those lodging with Snowshoe."

204.    Because the sole reason a vast majority of people lodge at the Resort is to ski or snowboard at Snowshoe Mountain, any doubt as to their ability to purchase a lift ticket if they lodge at the Corduroy Inn and Lodge, or another property owned by members of the Proposed Class, would cause the prospective guest not to book lodging there and to, instead, book at one of the SMI-managed units instead.

205.    This is particularly true for skiers or snowboarders who prefer to purchase their lift tickets as close as possible to when they plan to ski or snowboard.

206.    As tickets are non-refundable and non-assignable, upon information and belief, a significant portion of those who ski or snowboard on Snowshoe Mountain prefer to purchase their lift tickets as close as possible to when they ski or snowboard.

207.    Through the Preferred Ticket Program, SMI also offers discounts on lift tickets to those who lodge through SMI.

208.    By offering bundled discounted and guaranteed lift tickets, SMI is increasing its rivals' costs until they cease to compete with SMI and capitulate to SMI's desire to manage their lodging units.

209.    By not offering the Preferred Ticket Program to Ruby Dog's prospective guests or to the unit owners and guests of accommodations that make up the Proposed Class, SMI

intentionally and unjustifiably has interfered with those prospective and expected contractual relationships.

210.    Further, SMI's interference with the Corduroy Inn and Lodge's and the Proposed Class's prospective contractual relations is malicious and done in an effort to force Ruby Dog's Corduroy Inn and Lodge, and members of the Proposed Class, to become part of SMI's property management program.

211.    SMI profits from its management program, while participating lodging entities lose a portion of profit from becoming part of SMI's management program.

212.    The loss of guests at the properties owned by Ruby Dog and by members of the Proposed Class respectively, is caused by SMI's intentional interference in the prospective business relationships and contracts with guests of Ruby Dog's Corduroy Inn and Lodge and of members of the Proposed Class.

213.    Ruby Dog and the Proposed Class have suffered damages as a result of SMI's interference.

WHEREFORE, Ruby Dog respectfully requests, individually and on behalf of the Proposed Class, that this Court award damages for the harm resulting from SMI's tortious interference with existing contractual relationships including consequential damages, punitive damages, attorneys' fees and other relief the Court deems proper.

## JURY DEMAND

Plaintiff Ruby Dog, LLC demands, on behalf of itself individually and on behalf of all members of the Proposed Class, a trial by jury on all issues so triable.

Dated:  January 27, 2023                          Respectfully submitted:

                                                  /s/ Jeremy A. Mercer
                                                  Jeremy A. Mercer (WV #12622)

jmercer@porterwright.com
David I. Kelch (*pro hac vice*)
dkelch@porterwright.com
Porter Wright Morris & Arthur LLP
6 PPG Place, Third Floor
Pittsburgh, PA 15222
T: 412-235-4500

*and*

Jay L. Levine (*pro hac vice*)
jlevine@porterwright.com
Porter Wright Morris & Arthur LLP
2020 K Street, NW, Suite 600
Washington, D.C. 20006

*and*

Brian J. Warner, Esq.
Shuman McCuskey Slicer PLLC
300 Wedgewood Drive, Suite 110
Morgantown, WV 26505
Telephone: 304-291-2702
bwarner@shumanlaw.com

*Attorneys for Defendant, Ruby Dog, LLC*