```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**SNOWSHOE MOUNTAIN, INC.,**
a West Virginia corporation,

      Plaintiff/Counterclaim
      Defendant,

v.                                        CIVIL ACTION NO. 2:22-CV-18
                                                (KLEEH)

**RUBY DOG HOLDINGS, LLC,**
A foreign limited liability company,

      Defendant/Counterclaim
      Plaintiff,

And

**RUBY DOG, LP, and**
**KLB REAL ESTATE LLC,**

      Counterclaim Plaintiffs.

**MEMORANDUM OPINION AND ORDER**

On June 6, 2023, Plaintiff, by counsel, moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF No. 42. The motion is **GRANTED** for the reasons that follow.

**I.   PROCEDURAL HISTORY**

On November 23, 2022, Ruby Dog Holdings, LLC, ("Ruby Dog") removed this action to the Northern District of West Virginia pursuant to diversity jurisdiction. 28 U.S.C. § 1332; ECF No. 1, Notice of Removal.  Thereafter, the Court entered a First Order

**MEMORANDUM OPINION AND ORDER**

and Notice. ECF No. 4.  On January 27, 2023, Ruby Dog filed its answer, affirmative defenses, and counterclaims to Snowshoe Mountain Inc.'s ("Snowshoe") complaint for declaratory relief. ECF No. 22.  On March 3, 2023, Snowshoe filed its answer to Ruby Dog's complaint and counterclaims. ECF No. 27.  On March 24, 2023, Ruby Dog filed its amended to complaint and counterclaims. ECF No. 35.  On April 7, 2023, Snowshoe filed its answer to Ruby Dog's amended complaint and counterclaims. ECF No. 35.

On June 6, 2023, Snowshoe filed its motion for judgment on the pleadings and memorandum in support. ECF Nos. 42, 43.  On June 27, 2023, Ruby Dog filed its memorandum in opposition to Snowshoe's motion. ECF No. 47.  Snowshoe replied in support [ECF No. 49] and Ruby Dog filed a motion for leave to file surreply [ECF No. 55].  The motion is fully briefed and ripe for decision.

## II. FACTS

Snowshoe filed this declaratory judgment action to determine "whether the Recreational Covenant is a real covenant running with the land and therefore binding upon Snowshoe and Ruby Dog, or whether it is a personal covenant that bound only Snowshoe Company and ABAS." ECF No. 43, Mem. In Supp. J. on Pleadings 5; see generally ECF No. 1-1, Compl.  Snowshoe requests the Court declare the Recreational Covenant in the Amenities and Privileges

provision of the 1979 deed a personal covenant. ECF No. 43, Mem. In Supp. J. on Pleadings 1. The effect of Snowshoe's favored deed interpretation is that the Recreational Covenant would not be binding on Snowshoe and Ruby Dog.

"Snowshoe Company is the predecessor in title to Snowshoe Mountain, Inc. . . ., and ABAS is the predecessor in title to Ruby Dog Holdings, LLC." ECF No. 43, Mem. In Supp. J. on Pleadings 2. By recorded deed dated June 28, 1979, Snowshoe conveyed to ABAS a parcel of land situate in the Snowshoe Resort in Pocahontas County, West Virginia. Compl. ¶ 8. At issue is the following Recreational Covenant in the Amenities and Privileges provision of the 1979 deed:

> As a part of this conveyance, Snowshoe Company covenants and agrees that all guests of any hotel or lodge constructed on the property hereby conveyed and all purchasers of residence units constructed on such property shall have, receive and be entitled to all such Amenities and Privileges, respecting the recreational facilities of the Snowshoe Resort, as are or may in the future be extended by Snowshoe Company to other residents, invitees and guests of the Snowshoe Resort.

<u>Id.</u> ¶ 9. In juxtaposition lie four covenants running with the land, subject to the following language:

> This conveyance is made subject to those certain covenants, limitations, reservations, exceptions, rights-of-way, leases, restrictions, as may affect the property

> hereby conveyed, as set forth and contained in the aforementioned deed from Mower Lumber Company, and is further made subject to the following [four (4)] covenants and restrictions, **which shall run with and bind the land**, and which shall insure to the benefit of and be enforceable by Snowshoe Company and its successors and assigns . . . .

Id. ¶ 10 (emphasis in original). The Recreational Covenant is located in the deed before the "**run with and bind the land**" paragraph, and "is not identified as one of the four (4) covenants running with the land, nor is it identified as one of 'those certain covenants, limitations, reservations, exceptions, rights-of-way, leases, restrictions, as may affect the property hereby conveyed, as set forth and contained in the aforementioned deed from Mower Lumber Company.'" Id. ¶ 11.

Attempting crowd management in response to the COVID pandemic, Snowshoe implemented a Lift Ticket Guarantee in which it "guaranteed the lowest lift ticket rate available and . . . a lift ticket that provides [guests] access to both Snowshoe Basin and Silver Creek even if Snowshoe Basin is at capacity." Id. ¶ 22. To obtain this guarantee, guests must book their lodging "through Snowshoe, either through its website or through its guest services." Id. ¶ 22. The benefit includes guests who stay "at any of the condominiums and hotels located in Snowshoe Resort,

including Corduroy Inn," which is owned by Ruby Dog, "who book their lodging through Snowshoe." Id. ¶ 23.

Ultimately, Snowshoe is seeking an order granting its motion for judgment on the pleadings and declaring that the Recreational Covenant is not "a covenant running with the land [and therefore] binding upon subsequent successors to the original parties to the Subject Deed, namely, Snowshoe and Ruby Dog." ECF No. 43, Mem. In Supp. J. on Pleadings 13.  Ruby Dog, of course, opposes the relief sought, and seeks "declaratory judgment to enforce the deed covenant and monetary damages arising out of [Snowshoe's] breach of the relevant deed and its related tortious behavior." ECF No. 22, Def. Answer, 9.

### III. LEGAL STANDARDS

**A. Rule 12(c) of the Federal Rules of Civil Procedure**

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings."  "The standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6)." Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014) (citation omitted)).  The only difference between a Rule 12(c) motion and a Rule 12(b)(6) motion is timing.  See Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002).

When reviewing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6), the district court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). To be sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

> Therefore, a motion for judgment on the pleadings should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.

Drager, 741 F.3d at 474 (citation and quotation marks omitted)).

### B. Declaratory Judgment Act

The Declaratory Judgment Act authorizes district courts to "declare the rights and other legal relations of any interested

party seeking such declaration." 28 U.S.C. § 2201. In the Fourth Circuit, "a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (citing Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937) (internal citation omitted)).

## IV. DISCUSSION

After examining the 1979 deed in its entirety, the Court **DECLARES** the Recreational Covenant is not a real property covenant which runs with and binds the land and **GRANTS** Snowshoe's motion for judgment on the pleadings. [ECF No. 42]. As discussed more fully below, the Court finds it is evident Snowshoe Company and ABAS, the original parties to the 1979 deed, intended the Recreational Covenant to be a personal covenant.

"Deeds are subject to the principles of interpretation and construction that govern contracts generally." Syl. Pt. 3, Faith United Methodist Church and Cemetery of Terra Alta v. Morgan, 745 S.E.2d 461, 463 (W. Va. 2013). Therefore, in line with contract law, "[w]hen the language used is plain and unambiguous, courts are required to apply, not construe, the contract." Id. at

481. The intent of the parties is the "controlling factor in interpretation of deeds." Id. For the court to determine the intention of the parties, "the whole instrument must be carefully scanned." Id.

It is only when the deed is "inconsistent, confusing, or ambiguous on its face [that] a court must look to extrinsic evidence of the parties' intent to construe the deed." Gastar Expl. Inc. v. Rine, 806 S.E.2d 448, 455 (W. Va. 2017). A deed is not ambiguous because the parties disagree on the construction of the deed and what is conveys. Id. It is only when the deed contains language that could reasonably have "two different meanings or language of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Id.

It is the Court's duty to examine the 1979 deed in its entirety, "taking and considering all the parts together," to determine the intention of the parties. Faith United, 745 S.E.2d at 481. "If a written instrument framed to declare the rights of parties omit a matter that was present to the minds of each, the fact that such matter was not put in writing is conclusive of the intention of the framers of the instrument to leave it out." Harbert v. Cnty. Ct. of Harrison Cnty., 39 S.E.2d 177, 186 (W. Va. 1946) (internal citation and quotation omitted). Therefore, the explicit words or omissions of a deed "should be given great weight

**MEMORANDUM OPINION AND ORDER**

as the intentional expression of their purpose." Faith United, 745 S.E.2d at 482 (holding that because the deed conveyed a "surface only" interest meant that only the surface estate was conveyed); see also Foster v. Orchard Dev. Co., LLC, 705 S.E.2d 816, 826 (W. Va. 2010) (holding a "Design Guideline" was not a part of the covenant because it was "specifically define[d] the Design Guidelines as a document established separately by the Property Owners Association"). To hold contrary to what is written in the deed, it is considered "alter[ing] the language of the deed and . . . enlarg[ing] the estate conveyed by the deed." Faith United, 745 S.E.2d at 483.

The elements of a real covenant "consist of four essential factors: form, intent, nature of the promise (whether 'touching' or 'concerning' the land) and privity." McIntosh v. Vail, 28 S.E.2d 607, 610 (W. Va. 1943). Indeed, a real covenant runs with the land and binds subsequent parties by deed whereas a personal covenant binds only the original parties. Lydick v. Baltimore & O. R. Co., 17 W. Va. 427 (1880). In reviewing the 1979 deed in its entirety to determine the intention of the parties, see Faith United, 745 S.E.2d at 481, it is apparent the Recreational Covenant is not intended to run with the land, and is instead a personal covenant that binds only the original parties, namely Snowshoe Company and ABAS.

Here, the usage of "successors and assigns" used later in the deed indicates the Recreational Covenant is a personal covenant. The 1979 deed includes "successors and assigns" in four places.[1] "Successors and assigns" is not written in the Amenities and Privileges provision. Because it is absent from the provision at issue, it is conclusive that the provision included only be a personal covenant between Snowshoe Company and ABAS. Indeed, "[i]f a written instrument framed to declare the rights of parties omit a matter that was present to the minds of each, the fact that such matter was not put in writing is conclusive of the intention of the framers of the instrument to leave it out." Harbert v. Cnty. Ct. of Harrison Cnty., 39 S.E.2d 177, 186 (W. Va. 1946) (internal citation and quotation omitted).

---

[1] First, it is used to indicate ABAS's successors and assigns on Deed Book page 232 when Snowshoe Company is granting and conveying non-exclusive easements, rights-of-way, and licenses related to streets, trails, placement of water and sewage lines, and the maintenance of those lines. ECF No. 1-1, Ex. A to Compl. Second, it is used to designate Snowshoe Company's successors and assigns on Deed Book page 234 in reference to "the right and easement to construct, operate, maintain and remove" various lines like water, sewage and more. Id. Third, it is used to indicate Snowshoe Company's successors and assigns and ABAS's successors and assigns on Deed Book page 234 to advise that none of the earlier text will "prevent, interrupt or interfere with the provision of such utilities to the property hereby conveyed or the development and use of the property" by ABAS. Id. Fourth, it is used to indicate Snowshoe Company's successors and assigns on Deed Book page 235 to specify who will enforce four covenants explicitly stated in the deed. Id.

Similarly, the inclusion of the phrase "shall run with and bind the land" in the subsequent paragraph to the Recreational Covenant supports the Court's finding. The 1979 deed includes the phrase "shall run with and bind the land" once in the deed, and none of the four covenants associated with that paragraph relate to the Amenities and Privileges provision at issue. "Successors and assigns," using "shall run with and bind the land" once in the 1979 deed is conclusive evidence that neither of the original parties intended for the Amenities and Privileges provision to run with the land. A contrary finding would be considered "alter[ing] the language of the deed and . . . enlarg[ing] the estate conveyed by the deed." <u>Faith United</u>, 745 S.E.2d at 483.

## V. CONCLUSION

In reviewing the entire 1979 deed, it is clear its original parties, Snowshoe Company and ABAS intended only for the Recreational Covenant in the Amenities and Privileges provision to be a personal covenant. For the foregoing reasons, the Court **GRANTS** Snowshoe's motion for judgment on the pleadings [ECF No. 42] and **DECLARES** the Recreational Covenant in the Amenities and Privileges provision is not a real property covenant which runs with and binds the land. Because Ruby Dog's surreply brief would not aid the Court's decision-making process or alter its conclusion, the Court **DENIES** that request. [ECF No. 55].

**MEMORANDUM OPINION AND ORDER**

Pursuant to Federal Rule of Civil Procedure 54(b), and finding no just reason for a delay of the appeal of this Order, the Court **DIRECTS** entry of a final judgment in favor of Snowshoe Mountain, Inc. This case is **DISMISSED WITH PREJUDICE** and the Court **DIRECTS** the Clerk to **STRIKE** the matter from the Court's active docket.

It is so **ORDERED**.

Pursuant to Rule 54(b), the Court **DIRECTS** the Clerk to enter a separate judgment order. The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

**DATED:** October 10, 2023

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA